**Jose O. VERGARA and Esther Vergara, Plaintiffs,**

v.

**AEROFLOT "SOVIET AIRLINES", (GENERAL DEPARTMENT OF INTERNATIONAL AIR SERVICES, UNION OF SOVIET SOCIALISTIC REPUBLICS), Defendant.**

**Civ. No. 74–0–31.**

United States District Court, D. Nebraska.

March 5, 1975.

J. Michael Gottschalk, Omaha, Neb., for plaintiffs.

Charles P. Fike, Omaha, Neb., for defendant.

DENNEY, District Judge.

This matter comes before the Court on defendant's motion to dismiss [Filing #3]. Due to the complex issues involved, a full recitation of the facts is necessary.

Dr. and Mrs. Jose O. Vergara ("Plaintiffs") are citizens of the United States and residents of Omaha, Nebraska. In June, 1973, they contacted Nancy O'Leary, an employee of Bock Omaha Travel Agency, Inc. ("Bock") and requested assistance in making the necessary arrangements for a trip around the world. After a series of consultations, the necessary reservations and other arrangements were completed. On June 28, 1973, Dr. Vergara met with Nancy O'Leary in the Back offices located in Omaha. At that time, she gave him a series of airline flight coupon booklets ("Tickets") in exchange for his payment of the full amount required.

The Tickets consisted of twelve booklets, six of which referred to each plaintiff. Each booklet bore one of the numbers 8304 939 148 through 8304 939 159, inclusive, and each contained four identical coupons bearing the same number as the booklet itself. The following items of information appeared on the face of *each* of the 48 separate coupons delivered to the plaintiffs by Bock: The numbers of each of the other five booklets issued to each plaintiff; the fare for the entire journey; the number of the credit account by which payment was made; Omaha was designated as the place of origin and the place of destination; plaintiffs' entire itinerary; Bock was identified as the agency issuing the coupon; the statements, "Subject to conditions of contract on passenger's coupon" and "Passenger ticket and baggage check issued by Pan Am" were present in the lower right portion; and, information sufficient to identify at

least two segments of the journey, including fare basis, air carrier, flight number, date and time of departure and reservation status, was provided. Each booklet also contained two extensive references to the Warsaw Convention.

Plaintiffs' Itinerary was to be as follows:

| From | To | Airline | Date |
| --- | --- | --- | --- |
| Omaha | Chicago | United | June 29 |
| Chicago | San Juan | Eastern | June 30 |
| San Juan | Paris | Avianca | July 2 |
| Paris | Berlin | Air France | July 5 |
| Berlin | Leningrad | Aeroflot | July 10 |
| Leningrad | Moscow | Aeroflot | July 13 |
| Moscow | Tashkent | Aeroflot | July 17 |
| Tashkent | Kabul | Ariana Afghan | July 18 |
| Kabul | Delhi | Ariana Afghan | July 19 |
| Delhi | Hong Kong | Pan Am | July 20 |
| Hong Kong | Osaka | Cathy Pacific | July 20 |
| Osaka | Tokyo | Open | Open |
| Tokyo | Honolulu | Open | Open |
| Honolulu | San Francisco | Open | Open |
| San Francisco | Las Vegas | Open | Open |
| Las Vegas | Denver | Open | Open |
| Denver | Omaha | Open | Open |

The plaintiffs' trip was uneventful until they arrived at the airport in Tashkent on July 18, where they were informed that they could not continue to Kabul. Apparently there was a revolution in progress in Kabul and the scheduled carrier, Ariana Airlines was therefore not flying into or out of that city. In the course of several discussions with an Intourist Guide, the plaintiffs decided to fly from Tashkent to Karachi via Aeroflot, and then from Karachi to Osaka via Air France. By this route, they hoped to resume their itinerary with a minimum of delay and confusion. At the guide's direction, plaintiffs left the airport and went to an office in Tashkent, where a supervisor removed two coupons from each of their two ticket books. Upon returning to the airport, the guide gave the plaintiffs new Aeroflot tickets which were subsequently relinquished to the Aeroflot stewardess while en route to Karachi. When the flight arrived at Karachi, the plaintiffs were allegedly forcibly detained at a remote terminal, due to Aeroflot's failure to obtain permission to enter Pakistani air space.

As the facts related above indicate, this case involves an "international" flight governed by the Warsaw Convention, 49 Stat. 3000 (1934). The Court is therefore presented with numerous jurisdictional issues relating to the proper interpretation of Article 28 of the Convention, which states as follows:

(1) An action for damages must be brought, at the option of the plaintiff, in the territory of one of the High Contracting Parties, either before the court of the domicile of the carrier or of his principal place of business, or where he has a place of business through which the contract has been made, or before the court at the place of destination.

(2) Questions of procedure shall be governed by the law of the court to which the case is submitted.

This article has caused considerable confusion in the past, but more recently it has been held to require a federal court to undertake a three pronged test. A plaintiff must first establish that courts in the United States have "treaty jurisdiction." To do so, one of the four conditions specified in Article 28 must be satisfied. Then the plaintiff must show federal jurisdiction over the subject matter of the lawsuit. Finally, the defendant must be subject to personal jurisdiction within the district in which the suit was brought. Smith v. Canadian Pacific Airways Ltd., 452 F.2d 798 (2 Cir. 1971); Analyzed in Note, 13 Harv.Intl.L.J. 518 (1972).

■■ Turning now to the issue of treaty jurisdiction, clearly the courts of the United States have no jurisdiction pursuant to the "domicile of the carrier" or principal place of business of the carrier. Plaintiffs contend that Omaha (and a fortiori the United States) was the "place of destination." The cases uniformly hold that in a trip consisting of several parts it is the *ultimate* destination that is accorded treaty jurisdiction. Felsenfeld v. Societe Anonyme Belge D'Exploitation, 234 N.Y.S.2d 351 (Cty.Civ.Ct.1962); Berner v. United Airlines, 2 Misc.2d 260, 149 N.Y.S.2d 335; Burdell v. Canadian Pacific Airlines, Ltd., 11 Av.L. 17,351 (1969). *See,* also, A. Lowenfeld, Some Comments on Burdell v. Canadian Pacific Airlines, 3 Vand.L.J. 47 (1969).

When the original tickets were issued, Omaha was to be the final destination. The defendant contends that the change of plans in Tashkent terminated the original contract of transportation and created two new contracts—one from Tashkent to Karachi to Osaka, the other being from Osaka to Omaha with various stops. On this issue, the plaintiffs contend that the contract of carriage was merely modified and the final destination (Omaha) remained unchanged. The cases and authorities cited by the parties on the issue of modification, while helpful, are not particularly on point. Significantly, the Tashkent to Karachi trip was arranged by the defendant in an effort to permit the plaintiffs to continue their scheduled trip. Aeroflot was aware of the ultimate destination, as well as the intermediate stops. The rearranging of schedules due to missed or unavailable flights is a common occurrence and, in most such situations, the ultimate destination remains unchanged. Missed or unavailable flights are rarely caused by the wilful conduct of the airline or passenger, and passengers expect assistance from the airline in rearranging their itineraries. In the typical instance where one must take a different airline, the fare is disbursed between the airlines, and the passenger is not required to pay an additional amount. All of these factors persuade the Court that an airline ticket constitutes a highly modifiable contract. The parties expect such modifications and have evolved their attitudes and business procedures to readily accommodate modifications. *See,* Briscoe v. Compagnie Nationale Air France, 290 F.Supp. 863 (S.D.N.Y.1968). The rescheduling that occurred in this case was not atypical. The Court concludes that the Tashkent to Karachi trip was a mere modification of the original contract, which at all times included Omaha as the ultimate destination.

As previously stated, a finding of treaty jurisdiction is but the first step. The parties do not seriously contest subject matter jurisdiction pursuant to 28 U.S.C. § 1331, and such jurisdiction is clearly present.

The plaintiffs must also show personal jurisdiction over the defendant.

> For example the passenger (or his survivors) who bought a BOAC ticket through a travel agent or a connecting carrier in Omaha would still have to find and serve BOAC in order to bring an action, even if this meant going to Chicago or New York.

A. E. Lowenfeld, A. I. Mendelsohn, The United States and the Warsaw Convention, 80 Harv.L.Rev. 497, 523 (1967). In this regard, Neb.Rev.Stat. § 25–536

(1967) is pertinent, and states in part as follows:

(1) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:

(a) Transacting any business in this state;

.    .    .    .    .    .

(2) When jurisdiction over a person is based solely upon this section, only a cause of action arising from acts enumerated in this section may be asserted against him.

By affidavit and otherwise, plaintiffs have shown the Court that Pan American World Airways, Inc. is authorized by Aeroflot to issue Aeroflot tickets and to collect the appropriate fare. The Pan Am contract also provides that agents designated by Pan Am may take any action on behalf of defendant which Pan Am itself may undertake. The Pan Am contract specifically establishes that ticket sales may be effected through either Pan Am's offices or the offices of sales agents appointed by Pan Am. Plaintiffs purchased their original tickets through Bock Omaha Travel Agency, an authorized agent of Pan Am. To facilitate the purchase of airline tickets on diverse airlines, air carriers have formed the International Air Transport Association, of which Pan Am is a member. The Association is comprised of numerous carriers which, by issuing a certificate of authority, can authorize a travel agency to issue airline tickets. Under this arrangement, Bock retained a portion of the purchase price of plaintiffs' tickets as commission, and forwarded the remainder to an Area Settlement Bank. The Bank disburses the monies to the appropriate carriers. Significantly, a portion of the travel agent's commission is paid by each carrier. Thus, in this case, Aeroflot paid a pro-rata portion of the commission retained by Bock. Approximately once a month, Bock prepares tickets where Aeroflot is designated as one of the carriers. Another Omaha travel agency, Travel & Transport, Inc., prepares approximately one ticket per month involving Aeroflot. Travel Faire, Inc., also an Omaha travel agency, has on occasion prepared tickets involving Aeroflot. The defendant has no offices or employees within Nebraska; however, travel agents are given advertising material.

■ Against this background of facts, the Court has examined the Nebraska "long arm" statute quoted above. *See*, Comment, 6 Creighton L.Rev. 357 (1973); General Leisure Products Corp. v. Gleason Corp., 331 F.Supp. 278 (D. Neb.1971); Blum v. Kawaguchi, Ltd., 331 F.Supp. 216 (D.Neb.1971); Conner v. Southern, 186 Neb. 164, 181 N.W.2d 446 (1970); Stucky v. Stucky, 186 Neb. 636, 185 N.W.2d 656 (1971). These authorities persuade the Court that the Nebraska statute is limited only by the constitutional constraints imposed by the "Minimum contacts rule" of International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

■ The Court is persuaded by such factors as the express agency agreements, and the payment of a commission, that defendant was transacting business in Nebraska when the plaintiffs purchased their tickets. For the reasons stated in the portion of this memorandum relating to the Warsaw Convention, the Court concludes that the cause of action arose from the Nebraska transaction, not from the subsequent modifications made in Tashkent.

■ There is little question that venue is proper in this district, as the defendant is an alien business entity. 28 U.S.C. § 1391(d); Brunette Machine Works, Ltd. v. Kockum Industries, Inc., 406 U.S. 706, 92 S.Ct. 1936, 32 L.Ed.2d 428 (1972).

In conclusion, the Court notes that the parties have neither raised nor briefed the issue of whether the incident complained of falls within the term "acci-

dent" as used in Article 17 of the Warsaw Convention. Husserl v. Swiss Air Transport Co., Ltd., 351 F.Supp. 702 (S.D.N.Y.1971).

It is therefore ordered that defendant's motion to dismiss is denied.