Robert M. BOYAR, et al., Plaintiffs,

v.

KOREAN AIR LINES, Defendant.

Evelyn A. CHAUNCEY, as Ancillary Administrator c.t.a. of the Estate of Carol A. Grenfell, Plaintiff,

v.

KOREAN AIR LINES, Defendant.

Evelyn A. CHAUNCEY, as Ancillary Administrator c.t.a. of the Estate of Neil John Grenfell, Plaintiff,

v.

KOREAN AIR LINES, Defendant.

Civ. A. Nos. 85–3444, 84–2629 and 84–2627.

United States District Court, District of Columbia.

Feb. 27, 1987.

See also 664 F.Supp. 1478.

Juanita M. Madole, Speiser, Krause & Madole, Washington, D.C., for plaintiff in Civ. A. No. 85–3444.

Desmond T. Barry, Jr., George N. Tompkins, Jr., Condon & Forsyth, Washington, D.C., for defendant.

Harold A. Kurland, Kathleen A. Frensky, Nixon, Hargrave, Devans & Doyle, Washington, D.C., for plaintiff in Civ. A. Nos. 84–2629, 84–2627.

## MEMORANDUM OPINION

AUBREY E. ROBINSON, Jr., Chief Judge.

This matter comes before the Court on Defendant KAL's Supplements to its Motion for Entry of Orders of Dismissal. The above-captioned cases are pending in this Court as a result of the shootdown by the Soviets of KAL Flight 007 in 1983. Defendant's supplements once again call into question the scope of the jurisdictional provisions of the Warsaw Convention.[1]

Article 28(1) of the Warsaw Convention provides that:

An action for damages must be brought, at the option of the Plaintiff, in the territory of one of the High Contracting Parties, either before the court of the domicile of the carrier or his principal place of business, or where he has a place of business through which the contract has been made, or before the court at the place of destination.

Involved in these actions is a determination of the "place of business through which the contract has been made." Whether the United States is an appropriate forum for each case will, of course, turn on its individual facts. Underlying this determination, however, must be the recognition that Article 28 was intended to limit rather than broaden the jurisdiction of the nations adhering to the Warsaw Convention. The facts in all the cases appear to be undisputed.

### Facts

### The Lee Action

Jeong Bong Lee purchased a ticket in Seoul, South Korea from Northwest Orient Airlines. His trip was to begin and end in Seoul with one intermediate stop in Tokyo and six in the United States. The first two legs of the flight, Seoul-to-Tokyo and Tokyo-to-Los Angeles, were booked on Northwest Orient Airlines. The other segments of the ticket were left open as to date, carrier and flight. Mr. Lee paid the fare for the entire journey in Seoul at the time the ticket was issued.

On August 30, 1983, the New York office of KAL received a telephone call from a travel agent on behalf of Mr. Lee seeking to book space on that day's flight from New York to Seoul. The reservations agent reserved space for Mr. Lee on Flight 007. KAL did not issue a new ticket at this time because New York-to-Seoul was already listed as the final leg on Mr. Lee's original ticket. For the same reason, no new fare was paid.

In September, 1983, KAL billed Northwest Orient for Mr. Lee's fare, requesting payment in U.S. dollars. Northwest Orient is incorporated in the United States and has its principal place of business here.

---

1. Convention for the Unification of Certain Rules Relating to International Transportation by Air, October 12, 1929, 49 Stat. 3000, T.S. No. 876, 137 L.N.T.S. 11, *reprinted in* 49 U.S.C. § 1502 note (1976). There is no dispute that the Warsaw Convention applies to these actions.

## The Grenfell Actions

Neil John Grenfell and Carol A. Grenfell, husband and wife, planned to travel from New York to Seoul on August 14, 1983. KAL issued tickets to them in April, 1983 which listed the August 14 date. These tickets were issued in Hong Kong.

The Grenfells did not take the August 14 flight. Instead, Mr. Grenfell, who was employed by the Eastman Kodak Company, asked Kodak's International Reservations Agent in Rochester, New York, to change the flight to August 31, 1983. The Kodak travel agent arranged with an independent travel agency in Rochester to book the Grenfells on KAL Flight 007. This travel agent made the reservations by calling a KAL reservations agent in New York City. Once this process was completed, the Kodak travel agent applied stickers to the tickets the Grenfells has been issued in Hong Kong indicating the new dates and flight numbers. No new tickets were issued and the Grenfells were not required to pay any additional fare.

## The Park Action

Heung Sul Park travelled to the United States from Seoul, South Korea on a round-trip ticket paid for by his sister-in-law, Mrs. Seung Za Rhee. Mrs. Rhee, a resident of Broomfield Hill, Michigan, arranged for Mr. Park's transportation by visiting Detroit Travel Service, an authorized agent of KAL, located in Highland Park, Michigan. She gave the travel agent a check in the amount of $3,000.00 to pay for two round-trip flights with the following itinerary: Seoul-to-New York-to-Detroit-to-New York-to-Seoul.[2]

Mrs. Rhee's check was endorsed by the Detroit Travel Service and negotiated at a bank in Detroit. Although the travel agent could have issued the two tickets on KAL ticket stock and given them to Mrs. Rhee at the time of payment, Mrs. Rhee decided instead to use a KAL procedure called the prepaid ticket system which would enable the Parks to pick up their tickets at the airport in Seoul. Use of this system cost Mrs. Rhee $5.00. The Detroit Travel Service notified KAL's Chicago office that it wished to arrange for the two tickets and sent to the office a check for the amount of the two fares. This check was deposited in KAL's revenue account in Chicago.

In order to initiate the prepaid ticket system, KAL's Chicago office prepared a miscellaneous charges order (MCO) for the Parks. The primary purpose of this form is to notify KAL's headquarters office in Seoul that a fare had been paid in the United States for prepaid tickets. After the MCO was prepared and validated by the appropriate KAL stamp in Chicago, the Chicago office sent a telex (called a prepaid ticket advice (PTA)) to KAL's prepaid ticket desk in Seoul giving the information necessary to issue the appropriate tickets to the Parks. KAL's Seoul office issued the tickets and notified the Parks, who picked up the tickets at the airport. They were not required to pay any additional fare. The Parks then travelled to the United States.

The tickets prepared for the Parks did not contain any return date or flight number information. On August 15, 1983, an agent at Detroit Travel Service called KAL's New York reservations office to book space for the Parks' return flight. They were booked on KAL Flight 007 from New York to Seoul.

## Issue Presented

Although the cases involved in the Motion before the Court involve different factual situations, all of them require an answer to the question "when is a contract for air carriage formed?." Frequently, this question is easy to answer, for example, when a passenger buys a ticket for a particular flight at his or her point of departure from the carrier who then provides the service described on the ticket. Obviously, none of the scenarios presently before the Court are so clear-cut.

Defendant seems to argue that in no circumstance can there be a contract be-

2. The second round-trip transportation was purchased for Mr. Park's wife. Plaintiff and De-

fendant have settled her claim and it is not the subject of this action.

tween an airline and a passenger before the issuance of a passenger ticket. In short, KAL argues that the passenger ticket *is* the contract of which Article 28(1) speaks. Furthermore, KAL's position is that the location where a ticket is issued controls the jurisdictional question of Article 28(1) regardless of whether the passenger takes a different flight from the one set forth on the ticket, purchases a ticket which is open as to flight or carrier, or pays for the ticket and gives all of the necessary information for its issuance in another jurisdiction.

Plaintiffs on the other hand, argue that a ticket is merely evidence of the contract into which the airline and the passenger have entered. They appear to further suggest that the contract itself cannot be formed until the passenger selects and the airlines books the particular flight on which the passenger will actually travel.

### Analysis

The parties have presented no cases, and the Court has found none, which factually parallel the actions *sub judice.* Dicta from other Warsaw Convention cases, however, provide guidance in the determination of this issue.

The Court is of the opinion that a passenger ticket is not itself the contract to which the jurisdictional provision of the Warsaw Convention refers. The Court in *Block v. Compagnie Nationale Air France,* 386 F.2d 323 (5th Cir.1967) aptly described the contractual relationship upon which "the applicability of the Convention undeniably is premised:

> It is based on a contract of carriage that arises from the relationship between a 'carrier' and the passengers. This contractual relationship requires only that the carrier consent to undertake the international transportation of the passenger from one designated spot to another, and that the passenger in turn consent to the undertaking."

*Id.* at 330–331. The Court went on to say of the passenger ticket that it "was not the contract but its issuance evidenced the contractual relationship between (the parties)."

*Id.* at 336. This position is supported by Article 3(2), of the Warsaw Convention which states that "[t]he absence, irregularity, or loss of the passenger ticket shall not affect the existence or the validity of the contract of transportation." Although KAL has cited other cases which use the words "contract" and "ticket" interchangeably, none of these cases faced the necessity presented here of determining the definition of "contract" that was contemplated by those who drafted the Convention. As previously stated, in most situations, the place that the ticket is issued is also the place where the mutual consent of the parties or the "sale and purchase of transportation" occurs. *Id.* at 331, 334. But the Court believes that this is a factual determination to be made on a case-by-case basis.

The second question before the Court, which is presented by the *Lee* and *Grenfell* actions, regards the circumstances which terminate, as opposed to modify, a contract of carriage. It is clear that a passenger and an airline may create a contract, evidenced by the passenger ticket, and then completely terminate it. *See e.g., Mohammed v. Air Canada,* 12 Av.L.Rep. (CCH) 18,023 (N.Y.Sup.Ct.1973). Whether a passenger's actions constitute a termination or a modification, however, depends on the conduct of the parties. The Court agrees with the Court in *Vergara v. Aeroflot "Soviet Airline",* 390 F.Supp. 1266 (D.Neb.1975), that an airline ticket evidences "a highly modifiable contract. The parties expect ... modifications and have evolved their attitudes and business procedures to readily accommodate modifications." *Id.* at 1269 (citing *Briscoe v. Compagnie Nationale Air France,* 290 F.Supp. 863 (S.D.N.Y.1968)). Therefore, in most situations, where a passenger enters into a contract for air transportation but decides to take a flight that is in some way not represented by the passenger ticket issued to him or her, the passenger and the airline merely modify the original contract rather than enter into a wholly new one. Under these circumstances, "the place of business

through which the contract has been made" remains unchanged.

■ In the *Lee* action, the purchaser bought a ticket in Seoul from Northwest Orient Airlines. Northwest was able to issue a ticket which could later be used on a KAL flight because of the KAL/Northwest Orient Interline Agreement. This agreement provides that each party:

is authorized to issue or complete:
(a) tickets or MCO's exchangeable for tickets, for transportation of passengers.
(b) all other documents necessary or appropriate for such transportation:
all in the form approved by, and in accordance with the tariffs and the terms, provisions and conditions of the tickets, and other documents of the party over whose routes the passenger is to be carried. No ticket or MCO will be issued or completed providing for space on a particular flight unless an advance reservation (booking) shall have been made for the transportation, and the issuing airline shall have received payment of the total charges payable therefore in accordance with such tariffs or shall have made arrangements satisfactorily to the carrying airline for the collection of such charges.

Interline Agreement, Article II(1). Article II(3) of the Agreement further provides that:

Each party agrees to accept such tickets, or other transportation document and to honour each MCO issued by any other party hereto and to transport passengers and baggage as specified herein, subject to its applicable tariffs.

Although Northwest Orient in this case did not issue a ticket for a particular KAL flight as it could have done pursuant to Article II(1), it is clear that when it issued the passenger ticket to Mr. Lee, it bound KAL to perform any future transportation booked under the ticket subject only to seat avilability on any particular flight. In short, pursuant to the Interline Agreement, Northwest was acting in the capacity of KAL's agent when it issued the ticket. *See* Interline Agreement, Article VII(1). Agency relationships such as the one found here have been recognized by the courts. *See, e.g., Eck v. United Arab Airlines, Inc.,* 360 F.2d 804 (2d Cir.1966); *Eck v. United Arab Airlines, Inc.,* 15 N.Y.2d 53, 255 N.Y.S.2d 249, 203 N.E.2d 640 (1964); *Berner v. United Airlines, Inc.,* 3 A.D.2d 9, 157 N.Y. S.2d 884 (1st Dept. 1956), *aff'd,* 3 N.Y.2d 1003, 170 N.Y.S.2d 340, 147 N.E.2d 732 (1957).

■ Although the ticket did not refer to Korean Airlines or to Flight 007, it was this ticket that enabled Mr. Lee to take that flight. Plaintiff argues that by employing a travel agent to call KAL's New York office to book the particular flight, Mr. Lee rescinded the original contract he entered into with Northwest Orient as the agent for KAL. The facts do not support this conclusion. Mr. Lee consented to be transported round-trip from Seoul to New York with seven intermediate stops when he bought his ticket from Northwest Orient. KAL's "promise" or "undertaking" to transport Mr. Lee occurred when its agent, Northwest Orient, obligated it to perform the carriage, by issuing the ticket. The mutual consent necessary to the formation of the contract, therefore, occurred in Seoul. That Mr. Lee paid no additional fare when he designated KAL as the airline that would transport him over the final sector of the ticket is further evidence that the original contract was not abandoned. The Court must hold that Seoul, South Korea and not the United States is the location where the contract was made, and that the United States is not an appropriate jurisdiction to hear this action.

■ The Court must follow the same analysis in the *Grenfell* action. Mr. and Mrs. Grenfell were issued tickets in Hong Kong for a KAL flight leaving New York on August 14, 1983. Their plans changed and they decided to travel instead on KAL Flight 007 on August 31, 1983. Like in the *Lee* action, KAL was able to accommodate the Grenfells by booking them on this flight without issuing new tickets or requiring them to pay additional fares. Plaintiffs argue that the contract between the parties was limited to the August 14

flight. But the mutual consent requisite for a contract of carriage did not occur when the Grenfells changed their reservations. It occurred when the Grenfells consented to being transported on a set itinerary and KAL promised to transport them. Thus, Hong Kong was the location where the contract was made and the forum with Article 28(1) jurisdiction. The United States's Courts cannot entertain this action.[3]

▪ The *Park* action presents a situation where the issuance of the ticket did not occur at the place where the contract was made. Here, Mr. Park's sister-in-law appeared at a Michigan travel agent to book passage for Mr. and Mrs. Park on a specific itinerary. It was at this time that she provided all of the information that would be needed to issue the tickets. She also paid the entire fare for both tickets. There can be no argument that through their representative Ms. Rhee, the necessary consent on the part of the passengers to be transported occurred in the United States. It is also clear that when KAL's Chicago office accepted the fare from Ms. Rhee's travel agent and proceeded to prepare the MCO and send the PTA to KAL's prepaid ticket desk in Seoul that it promised to transport the passengers. It was at this time that "the carrier was legally bound to transport the passenger(s) ... and the passenger(s) for (their) part agreed to pay the fare and, in fact did pay the fare. Thus, there was mutuality of obligation and a binding contract of carriage." *Butz v. British Airways*, 421 F.Supp. 127, 130 (E.D.Pa.1976), *aff'd mem.*, 566 F.2d 1168 (3rd Cir.1977); *Rinck v. Deutsche Lufthansa A.G.*, 57 A.D.2d 370, 395 N.Y.S.2d 7 (1st Dept. 1977), *aff'd mem.*, 44 N.Y.2d 714, 405 N.Y.S.2d 456, 376 N.E.2d 929 (1978). That the consent between the parties and therefore the contract of carriage occurred in the United States is further evidenced by the fact that the travel agent could have issued the tickets to Mrs. Rhee on KAL ticket stock at the time she paid the fares. Although KAL has established a procedure for the convenience of its passengers by which it allows purchasers to pay a fee to allow passengers to pick up their tickets at their point of departure, this procedure does not change the fact that KAL consents to a passenger's air transportation when it accepts his or her fare for a particular itinerary. The Court concludes that in the *Park* action, the United States is the jurisdiction where KAL has "a place of business through which the contract has been made."

### Conclusion

For the foregoing reasons, the Court shall grant KAL's Motion and dismiss for lack of treaty jurisdiction the *Lee* and *Grenfell* actions. The Court shall deny KAL's Motion to Dismiss the *Park* action.

An appropriate Order accompanies this Memorandum Opinion.

### ORDER

Upon consideration of the Supplements to Motion of Defendant Korean Air Lines Co., Ltd. for Entry of Orders of Dismissal, Plaintiff's Opposition thereto and the entire record in this matter, it is by the Court this 27th day of February, 1987,

ORDERED, that Defendant's Motion is Granted with regard to Passenger Jeong Bong Lee and this action is hereby DISMISSED; and it is

FURTHER ORDERED, that Defendant's Motion is GRANTED with regard to Passenger Carol A. Grenfell and this action is hereby DISMISSED; and it is

FURTHER ORDERED, that Defendant's Motion is GRANTED with regard to Passenger Neil John Grenfell and this action is hereby DISMISSED; and it is

FURTHER ORDERED, that with regard to Passenger Heung Sul Park, Defendant's Motion is DENIED.

---

3. The Court believes that the facts now before it are sufficient to draw this conclusion and shall not allow further discovery by the Plaintiff in the Grenfell actions.