ROBERT P. BRADLEY, Retired Appellate Judge.
Mr. and Mrs. Bill Steber and Mr. and Mrs. Gordon Armstrong filed a complaint in the Circuit Court of Mobile County against British Caledonian Airways, Ltd., Delta Airlines, and Eastern Airlines, seeking damages for the loss of their baggage while flying on these airlines. British Cale-donian Airways, Ltd. (British Caledonian) was dismissed as a party-defendant for lack of jurisdiction; Delta Airlines and Eastern Airlines were given summary judgments against the Stebers and Arm-strongs.
The plaintiffs appealed the dismissal of British Caledonian as a party-defendant and also appealed the summary judgments awarded to Delta and Eastern. Before the appeal was submitted to this court, Delta and Eastern were dismissed as parties to this appeal. The case was then submitted to this court only on the issue of the dismissal of British Caledonian as a party-defendant in these proceedings.
*987 On appeal the plaintiffs contend that jurisdiction for this action was in Mobile County and that the trial court erred by holding to the contrary.
Both parties agree that the terms of the Warsaw Convention control this litigation.
Article 28(1) of the Warsaw Convention provides as follows:
“(1) An action for damages must be brought, at the option of the plaintiff, in the territory of one of the High Contracting Parties, either before the court of the domicile of the carrier or of his principal place of business, or where he has a place of business through which the contract has been made, or before the court at the place of destination.”
Convention for the Unification of Certain Rules Relating to International Transportation by Air, Oct. 12, 1929 (Warsaw Convention), 49 Stat. 3000 (1934), T.S. No. 876, 137 L.N.T.S. 11, reprinted in 49 U.S.C.App. § 1502 note.
The facts show that the plaintiffs originally purchased tickets from a'travel agency in Fairhope, Alabama to fly on Delta Airlines from Mobile, Alabama to London, England by way of Atlanta, Georgia and return to Mobile from Shannon, Ireland by way of Atlanta, Georgia.
On the day plaintiffs were scheduled to depart Mobile on their trip abroad, the Delta flight into Mobile was delayed and, with the help of Delta employees, the plaintiffs were placed on an Eastern flight to Atlanta, Georgia. The plaintiffs’ baggage was checked in by Eastern. On arrival in Atlanta the plaintiffs, with the assistance of Delta employees, were transferred to British Caledonian for the trip from Atlanta to London. The plaintiffs’ baggage did not accompany them on this flight to London.
The plaintiffs’ baggage did not arrive with them in London, but was given to them in Shannon, Ireland as they were commencing their return trip to Mobile. Because of the failure of plaintiffs’ baggage to follow them to London, they were forced to buy clothing and other personal articles to enable them to continue their journey. Consequently, plaintiffs filed this action to recover their damages.
The facts further show that neither the domicile nor the principal place of business of British Caledonian is in Alabama. Furthermore, the facts fail to show that a contract of carriage was made between plaintiffs and British Caledonian in Mobile County.
Plaintiffs argue, however, that “place of destination” as used in Article 28(1) means ultimate destination. Therefore, they argue, since Mobile was their ultimate destination, it was an acceptable forum for an action against British Caledonian. In support of their contention, they cite us to the case of Vergara v. Aeroflot “Soviet Airlines”, 390 F.Supp. 1266 (D.Neb.1975).
In the cited case the plaintiffs obtained tickets from a travel agency for an air flight around the world. The travel was to be made to various cities on several different airlines. The journey began in Omaha, Nebraska and was to' terminate in Omaha. For several legs of their journey, plaintiffs were scheduled to fly on Aeroflot Airlines. Due to circumstances beyond their control, plaintiffs were prevented from flying into one of the cities on their itinerary on another airline. With the help. of an Aeroflot employee, arrangements were made for the plaintiffs to fly on Aeroflot to another city, i.e. Karachi, Pakistan, which was not on their original flight schedule, and from there to the next city on the original schedule. On arrival in Karachi, plaintiffs were detained because of Aeroflot’s failure to obtain an entry permit. They sued for damages in Omaha, Nebraska.
The court held that in a trip consisting of several parts it is the ultimate destination that is accorded jurisdiction under the Warsaw Convention. It said Omaha was the original destination when the tickets were issued and Omaha remained the ultimate destination after the change in a portion of the trip. The court said the change in trip plans was a mere modification of the original contract, which kept Omaha as the ultimate destination. The court further noted that:
*988 “The rearranging of schedules due to missed or unavailable flights is a common occurrence and, in most such situations, the ultimate destination remains unchanged. Missed or unavailable flights are rarely caused by the wilful conduct of the airline or passenger, and passengers expect assistance from the airline in rearranging their itineraries. In the typical instance where one must take a different airline, the fare is disbursed between the airlines, and the passenger is not required to pay an additional amount.”
Vergara, 390 F.Supp. at 1269. Treaty jurisdiction was found to exist, and the motion to dismiss Aeroflot was denied.
British Caledonian rejects the theory that on a round-trip flight the point of origin is always the ultimate destination. For its position defendant relies on the cases of Hurley v. KLM Royal Dutch Airlines, 562 F.Supp. 260 (C.D.Cal.1983), and Aanestad v. Air Canada, Inc., 390 F.Supp. 1165 (C.D.Cal.1975).
These two cited cases stand for the proposition that in the round-trip situation there can be at least two places of destination for purposes of Article 28(1) jurisdiction. That being so, London rather than Mobile was the place of destination of the plaintiffs in the ease at bar as to the flight leg flown on British Caledonian.
In the case of In re Alleged Food Poisoning Incident, March, 1984, 770 F.2d 3 (2d Cir.1985), the United States Court of Appeals for the Second Circuit said that the question before it was whether, under the Warsaw Convention, an undivided transportation may have more than one destination if more than one carrier, or successive carriers, are parties to the contract of transportation.
The facts show that the air passenger bought a round-trip ticket originating and terminating in Riyadh, Saudi Arabia, with intermediate stops in Dharhan, Saudi Arabia; London, England; Washington, D.C.; and New York City. The passenger became ill as a result of food poisoning on the London-to-Washington leg of his flight. This leg was flown by a British Airways Concorde. This was the only leg of the passenger’s journey flown by British Airways.
The court of appeals said:
“First, the ‘destination’ of a journey for Convention purposes is determined by reference to the intent of the parties. ‘Plainly, when different carriers are involved, the pertinent unit of travel for determining the “destination” is the “single operation” of “undivided transportation” as “regarded by the parties.” ’ Petrire v. Spantax, S.A., 756 F.2d 263, 266 (2d Cir.1985) (quoting Warsaw Convention, Article 1(3)); see In re Air Crash Disaster at Warsaw, Poland, on March 14, 1980, 748 F.2d 94, 96-97 (2d Cir.1984). In other words, if the parties have regarded the transportation as a single, undivided operation, the beginning of that operation is the origin and the end of the operation is the destination.” (citations omitted)
770 F.2d at 5. Additionally, the court decided that this interpretation was supported by Article 1(2) of the Convention, which uses the term “destination” in the singular for an undivided transportation. It is the “destination,” and not an “agreed stopping place,” that controls for treaty jurisdiction purposes. For support of this view the court cited several cases, including the Vergara case.
The passenger disagreed with this view and said that, if successive carriers are involved in a journey, jurisdiction under the Convention is determined according to the contract of each successive carrier with the passenger.
The court replied that just because British Airways had not contracted to deliver the passenger to his ultimate destination did not mean that it and the passenger were not subject to the provisions of the Convention. The court said that Article 1(3) of the Convention, which provides that travel by successive air carriers shall be deemed undivided travel if the parties regard it as a single operation, whether agreed upon in a single contract or a series of contracts, does apply to the jurisdictional *989 provision of the Convention as well as to its other provisions.
The court concluded by holding that the passenger’s journey had only one destination, and that was the point of origin. Consequently, since the United States was not the final destination of the passenger’s journey, it was not the proper forum for this action.
Applying the rationale of In re Alleged Food Poisoning Incident, March, 1984 — and it appears to represent the majority opinion on this subject — to the facts in the case at bar, we see that the plaintiffs’ ultimate destination was always Mobile, Alabama. Moreover, we regard Eastern Airlines and British Caledonian as successive carriers in plaintiffs’ round-trip journey. Furthermore, we perceive no real difference in British Caledonian being a substitute carrier or a successive carrier named in the original contract.
The evidence reveals that as a result of its flight’s lateness in arriving in Mobile, Delta arranged for plaintiffs to fly to Atlanta on Eastern Airlines. The same procedure was followed by Delta in Atlanta in arranging plaintiffs’ passage to London on British Caledonian. There is no evidence that plaintiffs paid an additional fee for passage on British Caledonian to London from Atlanta.
As stated by the court in Vergara, the rearranging of schedules due to missed or unavailable flights is a common occurrence and, in most instances, the destination remains the same. Also, as is the usual case, the fare is disbursed to the carrying airline and the passenger is not required to pay an additional amount for passage.
Likewise, in the case at bar, Delta, the original carrier, arranged for the plaintiffs to fly to London from Atlanta on British Caledonian and they were not required to pay an additional fare for this segment of their round trip. Mobile, Alabama remained their ultimate destination at all times.
Consequently, we hold that the parties contemplated a single, undivided transportation by successive carriers on plaintiffs’ round-trip journey and that plaintiffs’ destination within the meaning of the Warsaw Convention always was the place from which the journey originated. Accordingly, the judgment of the trial court dismissing British Caledonian as a party-defendant is reversed and the cause remanded for further proceedings.
The foregoing opinion was prepared by Retired Appellate Judge ROBERT P. BRADLEY while serving on active duty status as a judge of this court under the provisions of section 12-18-10(e), Code 1975, and this opinion is hereby adopted as that of the court.
REVERSED AND REMANDED WITH DIRECTIONS.
ROBERTSON and RUSSELL, JJ., concur.
INGRAM, P.J., recuses himself.