**Maria De La Lastra PETRIRE, Plaintiff-Appellant,**

v.

**SPANTAX, S.A., Defendant-Appellee.**

**No. 247, Docket 84–7540.**

United States Court of Appeals, Second Circuit.

Argued Oct. 18, 1984.

Decided Feb. 28, 1985.

---

Frank H. Granito, Jr., New York City (Mark A. Pullano, Speiser & Krause, P.C., New York City, on brief), for plaintiff-appellant.

Michael J. Holland, New York City (Condon & Forsyth, New York City, on brief), for defendant-appellee.

Before NEWMAN, CARDAMONE and DAVIS,* Circuit Judges.

JON O. NEWMAN, Circuit Judge:

This appeal presents a narrow issue arising under the Warsaw Convention: [1] Where one carrier issues two ticket booklets for a round-trip journey, is the "destination" for purposes of the Treaty's jurisdictional provision the designated ending point of the round-trip journey or the designated ending point of the fatal travel covered by the first booklet. Maria de la Lastra Petrire appeals from a judgment of the District Court for the Eastern District of New York (Eugene H. Nickerson, Judge) dismissing, for lack of subject matter jurisdiction, her suit against Spantax, S.A., a Spanish airline. *In re Air Crash Disaster at Malaga, Spain,* 577 F.Supp. 1013 (E.D. N.Y.1984). Because we agree with Judge Nickerson that jurisdiction was lacking on the undisputed facts of this case, we affirm.

Appellant brought suit as the widow and mother of the minor children of Carlos Conrado, who was killed in the crash of a Spantax aircraft as it took off from Malaga, Spain, en route to New York. Conrado

---

* The Honorable Oscar H. Davis of the United States Court of Appeals for the Federal Circuit, sitting by designation.

1. Convention for Unification of Certain Rules Relating to International Transportation by Air, 49 Stat. 3000, T.S. No. 876, *reprinted in* 49 U.S. C.A. § 1502 note (1976).

had contracted with Spantax for air travel from Madrid to New York on a flight that stopped at Malaga and for a return flight from New York to Madrid. He was ticketed to return to Madrid five days after his expected arrival in New York. The ticketing was accomplished at the Madrid office of Spantax by the simultaneous issuance of two ticket booklets, consecutively numbered. The first contained two flight coupons, one for the flight from Madrid to Malaga and the second for the flight from Malaga to New York. The second booklet contained a single flight coupon for the flight from New York to Madrid.[2]

Article 28(1) of the Warsaw Convention specifies the permissible jurisdiction in which suit may be brought:

> An action for damages must be brought, at the option of the plaintiff, in the territory of one of the High Contracting Parties, either before the court [1] of the domicile of the carrier or [2] of his principal place of business, or [3] where he has a place of business through which tie contract has been made, or before the court [4] at the place of destination.

Appellant concedes that the first three locales specified in Article 28(1) would require her to bring suit in Spain. However, she asserts the right to sue in the United States[3] because New York was the destination listed on Conrado's Madrid-New York ticket.

Appellant does not dispute that, for purposes of the Warsaw Convention, the "destination" of a round-trip journey is the same as the starting point—in this case, Spain. *Butz v. British Airways*, 421 F.Supp. 127, 130–31 (E.D.Pa.1976), *aff'd mem.*, 566 F.2d 1168 (3d Cir.1977); *Grein v. Imperial Airways, Ltd.*, [1936] 1 K.B. 50, 1 Av.Cas. (CCH) 622 (1936); *see* R. Mankiewicz, *The Liability Regime of the International Air Carrier* § 32, at 30 (1981). Her point, however, is that the "destination" of a journey must be determined from the terms of the ticketing contract and that in this case the ticket booklet for travel from Madrid to New York was the pertinent contract.

There is no doubt that a "destination" is to be determined from the contract for transportation, whether the destination is pertinent to national jurisdiction under Article 28, *Gayda v. LOT Polish Airlines*, 702 F.2d 424 (2d Cir.1983), or to the international nature of a journey and the consequent application of the Treaty, *Grey v. American Airlines*, 95 F.Supp. 756 (S.D.N.Y.1950), *aff'd*, 227 F.2d 282 (2d Cir.1955), *cert. denied*, 350 U.S. 989, 76 S.Ct. 476, 100 L.Ed. 855 (1956). What is less clear is determination of the pertinent contract and the pertinent transportation.

In the District Court, Judge Nickerson took the sensible approach of ruling that at least in this case where it was undisputed that two ticket booklets were issued sequentially at the same time and the same place for round-trip travel to be interrupted by no more than a five-day stopover, a single contract had been made. The already fine distinctions that have developed in construing the Warsaw Convention would become absurd if the existence of a single contract turned on whether the three coupons issued for travel in this case were enclosed in one or two booklets, or whether a second booklet was used because the ticketing agent did not have on hand a ticket booklet with more than two coupons, or whether the two booklets were stapled together. What should matter when determining whether two or more ticket booklets constitute a single contract for purposes of the Treaty are the time and place of issuance of the booklets and the contem-

---

2. Spantax submitted an affidavit of the ticketing clerk at Madrid, who stated that he used two booklets because (a) his supply that day did not include booklets with more than two ticket coupons and (b) he used up one booklet by issuing coupons for travel from Madrid to Malaga and from Malaga to New York. Whether or not this was his reason, which appellant disputes and we need not decide, the facts concerning the time and place of issuance of the two booklets and the dates of the intended travel are undisputed.

3. Article 28 concerns jurisdiction on the "national level." *Smith v. Canadian Pacific Airways, Ltd.*, 452 F.2d 798, 801 (2d Cir.1971).

plated degree of continuity of the journey being ticketed. We need not attempt to formulate a general test to fit all of the combinations of relevant facts that might arise. It suffices to agree with Judge Nickerson that a single contract existed on the undisputed facts of this case. Appellant makes no claim that Conrado intended to purchase only a ticket from Madrid to New York and was issued a return ticket by mistake.

Determining the matter on the basis of when and where the booklets were issued and the nature of the journey contemplated accords with the scheme of the Treaty. Article 1(2) defines "international transportation" with reference to the place of departure and place of destination of any "transportation," and Article 1(3) elaborates on that term as follows:

> Transportation to be performed by several successive air carriers shall be deemed, for the purposes of this convention, to be one undivided transportation, if it has been regarded by the parties as a single operation, whether it has been agreed upon under the form of a single contract or of a series of contracts....

Plainly, when different carriers are involved, the pertinent unit of travel for determining the "destination" is the "single operation" of "undivided transportation" as "regarded by the parties," whether that transportation is ticketed in one or a series of contracts. *See Pimentel v. Bland*, 748 F.2d 94, 96–97 (2d Cir.1984).[4] When the transportation is to be performed by a single carrier, it would make little sense to use a different approach and let the number of contracts determine the "destination." In this case the undisputed facts

show a "single operation" of "undivided transportation" as "regarded by the parties." The objective facts of the ticketing, which justified Judge Nickerson in concluding that only one contract existed, also support the conclusion that there was one "transportation" within the meaning of the Treaty. The destination of that transportation was Madrid.

Appellant contends that an air traveler should not be deprived of the option of purchasing "two one-way tickets for the purpose of assuring Article 28 jurisdiction in a desired national venue." Brief for Appellant at 15. She relies on language in *Lisi v. Alitalia-Linee Aeree Italiane, S.p.A.*, 370 F.2d 508 (2d Cir.1966), *aff'd by an equally divided court*, 390 U.S. 455, 88 S.Ct. 1193, 20 L.Ed.2d 27 (1968), pointing out that a passenger must be given notice of the Treaty's limitations of liability so that he may have "the opportunity to purchase additional flight insurance or to take such other steps for his self-protection as he sees fit." *Id.* at 513. Even if we were to assume that a passenger might wish to select the number of ticket booklets for his journey in order to try to make available a forum in the country where the travel covered by one booklet is scheduled to terminate, such a maneuver is not the "self-protection" contemplated by *Lisi*.[5] An expressed preference for two ticket booklets cannot change the unitary nature of either the resulting contract or the transportation being ticketed. On the facts of this case, whether or not two ticket booklets were requested (and there is no claim that they were), there was only one contract and one transportation.

---

**4.** Separate contracts with separate destinations were held to exist when a second booklet was purchased six weeks after the first booklet, at a different city, and for travel to a different destination than was contemplated when the first booklet was issued. *Stratton v. Trans Canada Air Lines*, 27 D.L.R.2d 670, 7 Av.Cas. (CCH) 17,724 (Brit.Col.Sup.Ct.1961), *appeal dismissed*, 32 D.L.R.2d 736 (Brit.Col.Ct.App.1962). On the other hand, a single contract was held to exist when six ticket booklets each containing four coupons were issued at one place and one time

for a round-the-world journey with various stopovers. *Vergara v. Aeroflot "Soviet Airlines,"* 390 F.Supp. 1266 (D.Neb.1975).

**5.** If an air traveler wishes to take steps in contemplation of the hazards of flying not only by purchasing insurance but also by assuring that suit may be brought in a particular country, he usually has the option of traveling on a carrier whose domicile or principal place of business is located in that country.

The judgment of the District Court is affirmed.