**In re ALLEGED FOOD POISONING INCIDENT, MARCH, 1984.**

**Abdulrahman AL–ZAMIL, Plaintiff-Appellant,**

v.

**BRITISH AIRWAYS INC., Defendant-Appellee.**

**No. 1092, Docket 85–7089.**

United States Court of Appeals, Second Circuit.

Argued April 15, 1985.

Decided Aug. 2, 1985.

■■■■■■■■■

Michael B. Trister, Washington, D.C. (Abourezk, Sobol & Trister, Washington, D.C., of counsel), for plaintiff-appellant.

Lawrence Mentz, New York City (Wendy A. Grossman, John F. Schutty III, Condon & Forsyth, New York City, of counsel), for defendant-appellee.

Before OAKES, MESKILL and PIERCE, Circuit Judges.

PIERCE, Circuit Judge:

This appeal, from an order of the United States District Court for the Southern District of New York (Knapp, *Judge*) which dismissed plaintiff's complaint on the ground that there existed no treaty jurisdiction, raises the question whether, under the Warsaw Convention ("Convention"),[1] an undivided transportation may for jurisdictional purposes have more than one "destination" if more than one carrier, or successive carriers, are parties to the contract of transportation. We hold that when the parties have contemplated a single operation of undivided transportation only

1. Convention for the Unification of Certain Rules Relating to International Transportation by Air, Oct. 12, 1929 (Warsaw Convention), 49 Stat. 3000 (1934), T.S. No. 876, 137 L.N.T.S. 11, *reprinted in* 49 U.S.C. § 1502 note.

one "destination" exists, and, in the case of a round trip, that destination is the same as the place of origin. The plaintiff concedes that jurisdiction was proper in the United States only if the United States was his place of "destination" within the meaning of the Convention; we find no error in the district court's conclusion that it was not, and therefore affirm the district court's order dismissing the complaint for want of jurisdiction.

## BACKGROUND

Plaintiff's complaint alleged that on March 13, 1984, Al-Zamil, the Deputy Minister of Commerce for Saudi Arabia, contracted serious food poisoning while on board British Airways' Concorde Flight 189, en route from London to Washington, D.C. This flight was an intermediate leg of a round trip originating and terminating in Riyadh, Saudi Arabia, with stops in Dharhan, Saudi Arabia; London; Washington, D.C.; and New York City. All of the flights were ticketed in a total of two booklets, known as a "conjunction ticket"— the first booklet covered all stops from Riyadh to New York, and the second covered the return flight from New York directly to Riyadh. The only part of Al-Zamil's transportation provided by British Airways was the Concorde flight from London to Washington. The conjunction ticket was issued in Saudi Arabia, and the fare for the entire journey was paid in Saudi currency at the time the ticket was issued. Both booklets list Riyadh as the origin and destination of the journey.

Al-Zamil alleged that after contracting food poisoning, he received medical care in the United States. Thereafter, on May 11, 1984, he filed the complaint herein, in the

United States District Court for the District of Columbia, claiming both negligence and willful misconduct and seeking damages. The action was transferred by the Judicial Panel on Multi-District Litigation to the Southern District of New York, and was consolidated for pretrial purposes with the actions of other passengers relating to the same food poisoning incident. On January 7, 1985, the district judge in a memorandum decision granted the motion of British Airways and ordered Al-Zamil's complaint dismissed for lack of treaty jurisdiction. For the reasons hereinbelow stated, we affirm the district court's order.

## DISCUSSION

Al-Zamil concedes that jurisdiction over his claim can be had in a United States court only if the United States was the "place of destination" of his journey, within the meaning of Article 28(1) of the Convention.[2] He claims that because British Airways was involved in his trip only to the extent of transporting him from London to Washington, D.C., his "destination" was Washington, that is, the United States, for the purpose of determining treaty jurisdiction over this action. We disagree.

First, the "destination" of a journey for Convention purposes is determined by reference to the intent of the parties. "Plainly, when different carriers are involved, the pertinent unit of travel for determining the 'destination' is the 'single operation' of 'undivided transportation' as 'regarded by the parties.'" *Petrire v. Spantax, S.A.,* 756 F.2d 263, 266 (2d Cir. 1985) (quoting Warsaw Convention, Article 1(3)); *see In re Air Crash Disaster at Warsaw, Poland, on March 14, 1980,* 748

**2.** Article 28(1) provides:

An action for damages must be brought, at the option of the plaintiff, in the territory of one of the High Contracting Parties, either before the court of the domicile of the carrier or of his principal place of business, or where he has a place of business through which the contract has been made, or before the court at the place of destination.

We note that there are two levels of judicial power pertinent to the determination whether

suit may be maintained in the United States: the first involves jurisdiction in the international or treaty sense, under Article 28; the second relates to the power of a federal court, under federal statutes and practice, to hear a Warsaw Convention suit. Both levels must exist for suit to be maintained. *Smith v. Canadian Pacific Airways, Ltd.,* 452 F.2d 798 (2d Cir.1971). Because we hold that the first level herein is not satisfied, no analysis of the second level is necessary.

F.2d 94, 96–97 (2d Cir.1984). In other words, if the parties have regarded the transportation as a single, undivided operation, the beginning of that operation is the origin and the end of the operation is the destination. *See Gayda v. LOT Polish Airlines*, 702 F.2d 424, 425 (2d Cir.1983); *In re Air Crash Disaster at Malaga, Spain on September 13, 1982*, 577 F.Supp. 1013, 1014 (E.D.N.Y.1984), *aff'd sub nom. Petrire v. Spantax, S.A.*, 756 F.2d 263 (2d Cir.1985); *Butz v. British Airways*, 421 F.Supp. 127, 130–31 (E.D.Pa.1976), *aff'd mem.*, 566 F.2d 1168 (3d Cir.1977).

■ That a single, undivided transportation has only one beginning and one end would seem logically clear. This interpretation is supported by the Convention, which in Article 1(2) uses the term "destination" in the singular, implying that there is only one "destination" for an undivided transportation. Article 1(2) also draws a distinction between a "destination" and an "agreed stopping place." It is the "destination," and not an "agreed stopping place," that controls for purposes of treaty jurisdiction under the Convention. *Gayda*, 702 F.2d at 425; *Bornstein v. Scandinavian Airlines System*, 16 Av.Cas. (CCH) 17,-741 (S.D.N.Y.1981); *Butz*, 421 F.Supp. at 130–31; *Vergara v. Aeroflot "Soviet Airlines"*, 390 F.Supp. 1266 (D.Neb.1975); *Rinck v. Deutsche Lufthansa A.G.*, 57 A.D.2d 370, 395 N.Y.S.2d 7 (1977), *aff'd mem.*, 44 N.Y.2d 714, 405 N.Y.S.2d 456, 376 N.E.2d 929 (1978); *Bowen v. Port of New York Authority*, 8 Av.Cas. (CCH) 18,-043 (N.Y.Sup.Ct.1964).

■ Herein, Al-Zamil purchased one ticket, in two booklets, for a round-trip journey. The booklets clearly listed Riyadh as both the origin and destination of the voy-

age. It seems clear to us, as it was to the district court, that the ultimate destination of this journey was Riyadh, and not any point within the United States. The stops in the United States were no more than "agreed stopping places." *See Gayda*, 702 F.2d at 425; *Butz*, 421 F.Supp. at 130–31.

Indeed, Al-Zamil does not dispute that the *ultimate* destination of his journey was Riyadh, or that a single operation of undivided transportation was contemplated herein. He argues, however, that if successive carriers are involved in a journey, jurisdiction under the Convention is determined by the destination according to the contract of *each* successive carrier with the passenger. We disagree. Al-Zamil relies upon *In re Air Crash Disaster at Warsaw, Poland, on March 14, 1980*, 748 F.2d 94 (2d Cir.1984). *Warsaw*, however, held only that, on its facts, the parties had not regarded the voyage as a "single operation" of "undivided transportation." *Id.* at 96–97. Al-Zamil's reliance upon Article 30(1) of the Convention[3] is also misplaced. *Warsaw* held that pursuant to Article 30(1), each carrier on a journey involving successive carriers may have contractual obligations that must be individually discharged; specifically, that one carrier does not escape its obligation under the Convention to deliver an appropriate ticket simply because the other carriers have discharged their similar obligations. *Id.* at 97. In this case, merely because British Airways was not contractually obligated to deliver Al-Zamil to his ultimate destination does not mean that it, and Al-Zamil, are not subject to the jurisdictional provisions of the Convention.

Similarly, we reject Al-Zamil's argument that Article 1(3),[4] defining the circumstanc-

---

3. Article 30(1) provides:

In the case of transportation to be performed by various successive carriers and falling within the definition set out in the third paragraph of article 1, each carrier who accepts passengers, baggage or goods shall be subject to the rules set out in this convention, and shall be deemed to be one of the contracting parties to the contract of transportation insofar as the contract deals with that part of the

transportation which is performed under his supervision.

4. Article 1(3) provides:

Transportation to be performed by several successive air carriers shall be deemed, for the purposes of this convention, to be one undivided transportation, if it has been regarded by the parties as a single operation, whether it has been agreed upon under the form of a single contract or of a series of

es under which a journey is to be considered a "single operation" of "undivided transportation," does not apply to questions of jurisdiction under the Convention. Article 1(3) unequivocally applies "for purposes of this Convention." In our view, this language amply encompasses the jurisdictional provisions of the Convention, and we believe that Article 1(3) does indeed apply to jurisdictional, as well as other, Convention provisions. *See Petrire*, 756 F.2d at 266.

Al-Zamil next claims that to hold British Airways not to be amenable to suit in the United States in this case would run counter to the policy of Article 28, which, he asserts, evidences a general intent to limit the places in which a carrier may be sued. We do not consider our holding today to be contrary to the intent underlying Article 28. Instead, we read the language of Article 28 and Article 1(3) in conjunction, and hold that they clearly indicate that a journey has but one "destination" for purposes of jurisdiction under the Convention. We agree with the district judge that the destination herein was Riyadh, not the United States.

We have considered appellant's remaining claims and find them to be without merit. We hold that in cases of round-trip carriage involving successive carriers, where the parties contemplated a single operation of undivided transportation, the "destination" of the journey is the ultimate destination, that is, the place from which the journey originated. Accordingly, we affirm the judgment of the district court.

contracts, and it shall not lose its international character merely because one contract or a series of contracts is to be performed entirely within a territory subject to the sovereignty, suzerainty, mandate, or authority of the same High Contracting Party.