Stefania KLOS, Personal Representative of the Estate of Stanislaw Klos, Deceased; Jolanta Sawicki, Personal Representative of the Estates of Waclaw Wojewodzski, Deceased, and Rozalia Wojewodzski, Deceased, Plaintiffs–Appellees,

v.

POLSKIE LINIE LOTNICZE, aka LOT Polish Airlines, Defendant–Appellant,

Estate of Zygmunt Pawlaczyk; Estate of Leopold Karcher; Union of Soviet Socialist Republics; Ministry of the Aviation Industry of the Soviet Government; Aviaexport; Kazan Aviation Plant; Soloviev Aviation & Engine Manufacturing Co., Ltd., Inc.; Foreign Corps. & Foreign Citizens, Defendants.

No. 379, Docket 97–7073.

United States Court of Appeals, Second Circuit.

Argued Oct. 1, 1997.

Decided Dec. 8, 1997.

---

Bruce J. Ressler, Ressler & Ressler, New York City, for plaintiffs-appellees.

John F. Schutty, III, Condon & Forsyth, New York City, for defendant-appellant.

Before: VAN GRAAFEILAND and McLAUGHLIN, Circuit Judges, and POLLACK, District Judge.*

McLAUGHLIN, Circuit Judge:

LOT Airlines appeals from a judgment of the United States District Court for the Eastern District of New York (Nickerson, *J.*) awarding plaintiffs $75,000 per decedent in their wrongful death action. LOT Airlines argues that the district court erred when it failed to dismiss plaintiffs' complaint for lack of subject matter jurisdiction. We agree and, therefore, reverse.

## BACKGROUND

Polskie Linie Lotnicze, also known as LOT Polish Airlines ("LOT"), is the state-owned and operated official airline of the Republic of Poland. In the spring of 1987, Stanislaw Klos, Waclaw Wojewodski and Rozalia Wojewodzski ("decedents"), all citizens and residents of Poland, boarded LOT flight no. 5055 in Warsaw bound for New York City. While all three decedents boarded the flight with round-trip tickets from Warsaw to New York, plaintiffs claim that not one of them intended to return to Warsaw. Instead, plaintiffs claim, decedents intended to flee Communist Poland and start a new life in the United States. Unfortunately, the plane crashed just outside Warsaw. All passengers were killed.

Decedents' surviving relatives ("plaintiffs"), along with the surviving relatives of other victims of the crash, filed a wrongful death lawsuit against LOT and others in the United States District Court for the Eastern District of New York (Nickerson, *J.*). The parties agreed that the action was governed by the Warsaw Convention.

LOT moved to dismiss the action for lack of subject matter jurisdiction. LOT argued that plaintiffs could not satisfy any of the four grounds set forth in the Warsaw Convention conferring jurisdiction upon a court. The district court denied the motion, finding that the court had subject matter jurisdiction under the fourth ground provided in the treaty.

The district court certified its ruling for immediate appeal, pursuant to 28 U.S.C. § 1292(b), but we denied LOT's application for interlocutory review on December 19, 1995. To expedite proceedings and to obtain an appealable final judgment, plaintiffs and LOT agreed to resolve the action by stipulation. The court entered judgment against LOT and awarded plaintiffs $75,000 per decedent.

LOT now appeals, maintaining that the district court erred when it held that it had subject matter jurisdiction under the Warsaw Convention.

## DISCUSSION

■ There is no dispute as to the facts. The parties agree, therefore, that this appeal

* The Honorable Milton Pollack of the United States District Court for the Southern District of New York, sitting by designation.

presents only an issue of law. We review an issue of law, including a determination of jurisdiction, *de novo. See Robinson v. Overseas Military Sales Corp.,* 21 F.3d 502, 507 (2d Cir.1994).

■ The parties also agree that this case is governed by the Warsaw Convention. Article 28(1) of the Convention provides that a damages action that arises from international transportation can be brought only in one of four alternative fora: (1) where the carrier is domiciled; (2) where the carrier has it principal place of business; (3) where the contract of transportation was made; or (4) the place where the transportation was to end, known technically as the "place of destination." 49 Stat. 3020; 49 U.S.C. § 1502 note. If the action is not brought in one of these four jurisdictions, the court does not have subject matter jurisdiction over it. *See In re Alleged Food Poisoning Incident, March, 1984,* 770 F.2d 3, 5 n. 2 (2d Cir.1985).

■ There is no disagreement that the first three bases confer jurisdiction only on a Polish court. The sole issue, therefore, is whether the district court in Brooklyn had jurisdiction under the fourth basis—where the transportation was to end, i.e. the "place of final destination."

This Court has held numerous times that the place of final destination for purposes of jurisdiction under the Warsaw Convention is the return city appearing on a round-trip ticket. *See In re Alleged Food Poisoning,* 770 F.2d at 6–7; *Petrire v. Spantax, S.A.,* 756 F.2d 263, 266 (2d Cir.1985); *Gayda v. LOT Polish Airlines,* 702 F.2d 424, 425 (2d Cir.1983) (per curiam). All these cases, however, involved parties who did not disavow their intent to return eventually to the originating city appearing on the round-trip ticket. *See In re Alleged Food Poisoning,* 770 F.2d at 6–7; *Petrire,* 756 F.2d at 266; *Gayda,* 702 F.2d at 425. The same argument—that jurisdiction could be based on an interim city appearing on a round-trip ticket—was consistently rejected. *See In re Alleged Food Poisoning,* 770 F.2d at 6–7; *Petrire,* 756 F.2d at 266; *Gayda,* 702 F.2d at 425.

This case presents a new issue. Here, plaintiffs claim that, while the deceased passengers purchased round-trip tickets from Warsaw to New York, they never intended to return to Poland. Indeed, the decedents allegedly bought round-trip tickets only because LOT had a policy, in line with the Communist Polish government's policy, requiring Polish citizens traveling to the United States to buy round-trip tickets or demonstrate that they provided return to Poland by other means. Decedents did not reveal to LOT their secret intentions to stay in the United States, because if they told the truth they feared that they would not be allowed to leave Poland.

Plaintiffs make two principal arguments on appeal: (1) the district court correctly determined that the final destination of decedents was really New York, in light of their secret intent to remain in the United States; and alternatively, (2) the provisions of decedents' tickets providing for return from New York to Warsaw are unenforceable as contracts of adhesion.

### A. *Final Destination*

Plaintiffs argue that the district court correctly determined that decedents' subjective intent controlled; and, because the evidence demonstrated that decedents intended to stay in the United States, the district court had jurisdiction under the Warsaw Convention. We disagree.

In rejecting LOT's motion to dismiss for lack of subject matter jurisdiction, the district court recognized that the cases in this circuit suggest that "a passenger's ultimate destination is to be determined by looking at the contract between the passenger and the airline." *In re Air Crash Disaster Near Warsaw,* 760 F.Supp. 30, 31 (E.D.N.Y.1991). The district court, nevertheless, rejected this view and held that "the ultimate destination of the passenger is the place where the passenger intended to end up and would have but for the accident. The intention of the passenger alone, and not the mutual intention of the parties as expressed in the contract, or otherwise, determines the passenger's 'ultimate destination.'" *Id.* at 32.

■ This Court, as well as several other courts, has held that determining what city constitutes the final destination under the Warsaw Convention is governed by the con-

tract between the parties, using basic contract principles. *See Swaminathan v. Swiss Air Transport Co.*, 962 F.2d 387, 389 (5th Cir.1992); *In re Alleged Food Poisoning Incident*, 770 F.2d at 5; *Petrire*, 756 F.2d at 265; *Gayda*, 702 F.2d at 425; *In re Korean Air Lines Disaster of September 1, 1983*, 664 F.Supp. 1478, 1479 (D.D.C.1986); *In re Air Crash Disaster at Malaga, Spain on Sept. 13, 1982*, 577 F.Supp. 1013, 1015 (E.D.N.Y. 1984).

■ The fundamental objective of contract interpretation is to give effect to the expressed intentions of the parties. *See Hunt Ltd. v. Lifschultz Fast Freight, Inc.*, 889 F.2d 1274, 1277 (2d Cir.1989). When interpreting the meaning of a contract, it is the objective intent of the parties that controls. *See Swaminathan*, 962 F.2d at 389. The secret or subjective intent of the parties is irrelevant. *See id.; see also* E. Allan Farnsworth, *Contracts* § 7.9.

■ When a contract is unambiguous, the instrument alone is taken to express the intent of the parties. *See Swaminathan*, 962 F.2d at 389. Contract language is unambiguous when it has a definite and precise meaning and where there is no reasonable basis for a difference of opinion. *See Sayers v. Rochester Tel. Corp. Supplemental Management Pension*, 7 F.3d 1091, 1094 (2d Cir. 1993).

In this case, the contract is a paragon of clarity. The ticket purchased by decedents from LOT provides for air transportation from Warsaw to New York and back to Warsaw. It is beyond doubt that decedents and LOT intended to enter into a contract; and that contract called for a round-trip ticket from Warsaw to New York. All three decedents knowingly purchased round-trip tickets. Decedents never inquired as to whether a one-way ticket was available or made any indication whatsoever to LOT that they intended to use only the one-way portion of their tickets. Likewise, LOT sold decedents a round-trip ticket and was contractually obligated to fly the decedents back to Poland if asked to do so.

The plaintiffs admit that decedents wanted to keep their intentions to remain in the United States secret because they feared that the Polish government would not allow them to leave if they knew decedents did not plan to return. This is further evidence that decedents' *expressed* intent was to purchase a round-trip ticket with a final destination of Warsaw. In fact, it was imperative to decedents' plan that LOT believe their expressed intent to return to Warsaw. *See Swaminathan*, 962 F.2d at 389 (return city on round-trip ticket was "final destination" even though plaintiff intended to stay in interim city and bought round-trip ticket only because it was less expensive than one-way); *In re Korean Air Lines Disaster of September 1, 1983*, 664 F.Supp. at 1479 (return city on round-trip ticket was "final destination" even though plaintiff lived in interim city and bought round-trip ticket only because it was his company's policy to purchase tickets that way).

The contract between LOT and decedents was unambiguous, indicating the clear mutual intent of the parties that Warsaw be the place of final destination.

## B. *Contract of Adhesion*

The plaintiffs also contend that the round-trip provisions of the tickets are invalid because they constitute contracts of adhesion.

■ A contract of adhesion is a contract formed as a "product of a gross inequality of bargaining power" between parties. *Aviall, Inc. v. Ryder Sys., Inc.*, 913 F.Supp. 826, 831 (S.D.N.Y.1996). A court will find adhesion only when the party seeking to rescind the contract establishes that the other party used "high pressure tactics," or "deceptive language," or that the contract is unconscionable. *Id.* "Typical contracts of adhesion are standard-form contracts offered by large, economically powerful corporations to unrepresented, uneducated, and needy individuals on a take-it-or-leave-it basis, with no opportunity to change the contract's terms." *Id.*

■ The concept of adhesion contracts introduces the serpent of uncertainty into the Eden of contract enforcement. At the very least, it represents a serious challenge to orthodox contract law that a contract is to be interpreted in accordance with the objective manifestation of the parties' intent. At bottom, it is a notion evolved from public policy that refuses to enforce a contract provision

when it offends basic notions of civility and fair play. It may not be invoked to trump the clear language of the agreement unless there is a disturbing showing of unfairness, undue oppression, or unconscionability. *See Carnival Cruise Lines, Inc. v. Shute,* 499 U.S. 585, 593, 111 S.Ct. 1522, 1527, 113 L.Ed.2d 622 (1991); *Ames v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 567 F.2d 1174, 1181 n. 1 (2d Cir.1977).

Factors to be considered in determining whether a contract of adhesion is unconscionable include whether the "coerced" party was on notice of the offending provision, *see Carnival Cruise Lines,* 499 U.S. at 594–95, 111 S.Ct. at 1527–28; *Pitasi v. Stratton Corp.,* 968 F.2d 1558, 1562–63 (2d Cir.1992); whether the "coercing" party achieved agreement by fraud or overreaching; and whether any alternatives existed for the "coerced" party. *See Carnival Cruise Lines,* 499 U.S. at 594–95, 111 S.Ct. at 1527–28.

Decedents' round-trip tickets from Warsaw to New York were not contracts of adhesion. Because of the Polish government's policy, decedents were not free to purchase one-way tickets to New York from LOT. But, unlike a contract of adhesion, before purchasing the tickets, decedents were on full notice that they had to purchase round-trip air fare if they chose to travel to the United States. *See id.* There is no suggestion that LOT sold decedents round-trip tickets by fraud or deceit.

Decedents also presumably had other alternatives. *See id.* LOT would have sold decedents a one-way ticket to New York if they had demonstrated another means of transportation back to Poland. Decedents could have purchased a one-way ticket to New York and returned via another mode of transportation, such as a combination of boat, rail, etc. Decedents also could have chosen a destination other than New York. LOT's policy was applicable to travel to the United States; decedents might have purchased one-way fares to another destination and then arranged transportation from that destination to the United States.

Finally, decedents need not have flown with LOT. In 1987, PanAm flew from New York to Warsaw. Plaintiffs present no evidence that decedents could not have purchased a one-way ticket to New York on PanAm.

Decedents were on full notice of LOT's policy regarding air fare from Poland to the United States and there were several transportation alternatives. Accordingly, it cannot be said that LOT's policy was so oppressive or unconscionable as to reach the threshold of an unenforceable contract of adhesion. *See Carnival Cruise Lines,* 499 U.S. at 594–95, 111 S.Ct. at 1527–28.

We have considered all the additional arguments raised on appeal and find them unconvincing.

Accordingly, the judgment of the district court is reversed and remanded with instructions to dismiss complaint in accordance with this opinion.