**Grace LAM, Individually, and as Executrix of the Estate of Daniel Y. Lam, deceased, Plaintiff,**

v.

**AEROFLOT RUSSIAN INTERNATIONAL AIRLINES, Defendant.**

No. 94 Civ. 5931(WK).

United States District Court, S.D. New York.

April 14, 1998.

James Kreindler, David Fiol, Kreindler & Kreindler, New York City, for Plaintiff.

Michael J. Holland, Condon & Forsyth, New York City, for Defendant.

### *OPINION & ORDER*

WHITMAN KNAPP, Senior District Judge.

This is an action by Grace Lam, individually, and as executrix of the estate of her deceased husband, Daniel Lam, against Aeroflot Russian International Airlines. She seeks damages in excess of $10 million arising out of the death of her husband resulting from the crash of Aeroflot Flight No. SU593 in Novokuznetsk, Kemerovskaya Province, Russian Federation en route from Moscow to Hong Kong on March 22, 1994. Subject matter jurisdiction—or lack of it—is governed by a treaty of the United States, the Convention for the Unification of Certain Rules Relating to International Transportation by Air, concluded at Warsaw, Poland, October 12, 1929 ("Warsaw Convention"), as amended by the Hague Protocol of 1955. It is plaintiff's position that courts of the United States have such jurisdiction because the Aeroflot flight on which her husband met his death was a segment of his round-trip business tour beginning and ending in Denver.

The defendant, on the other hand, has moved for summary judgment, contending that since Aeroflot issued tickets only for a journey beginning and ending in Hong Kong, the courts of the United States have no jurisdiction. For reasons that follow, we deny defendant's motion.

---

**1.** Lam planned to make several intermediate stops within countries (*e.g.*, Moscow, Omsk, San Francisco) which are not set forth in the main text because they are not relevant to the legal analysis.

### BACKGROUND

In March 1994, Daniel Lam was a United States citizen who made his home in Denver, CO with his wife, the plaintiff in this action. In early 1994, he decided to take a business trip to several cities in China and Russia, ultimately returning to Denver. He intended and attempted to book his entire itinerary through his travel agent in Denver, Greenwood Travel. Lam asked Greenwood to book air travel from Denver to Hong Kong, Hong Kong to mainland China, China to Hong Kong, Hong Kong to Russia, Russia to Hong Kong, and finally Hong Kong to Denver.[1] Greenwood proceeded to book him on United Airlines from Denver to Hong Kong (and back), on Dragon Air from Hong Kong to mainland China (and back), and then attempted to book with Aeroflot the Hong Kong to Russia segment of the trip.

Due to what appears to have been a computer or communications problem with Aeroflot's ticketing system, Greenwood, an authorized agent for the issuance of tickets for flights on Aeroflot which regularly issued such tickets, proved unable to secure tickets on Aeroflot for the Hong Kong/Russia segment of the journey. When Greenwood called Aeroflot's United States office to attempt to remedy the problem, it was told that Lam should instead book the ticket through an overseas agent. Following that suggestion, Lam sent an "urgent" fax to Li Wah Shing, a travel agent in Hong Kong, in effect asking him to act as his agent and purchase tickets for the segment from Hong Kong to Russia and back. Agent Li obtained the needed Aeroflot tickets from Global Union Express (Hong Kong) Ltd. ("G.U.E."), the sole sales agent for Aeroflot in Hong Kong. The following is a reproduction of the ticket issued by G.U.E. at agent Li's request:

AEROFLOT — NON ENDORSABLE — PASSENGER TICKET AND BAGGAGE CHECK SUBJECT TO CONDITIONS CONTAINED IN THIS TICKET — ORIGIN/DESTINATION — SITI 13391512 08MAR — M9L3R — G. U. E. — G.S.A./AEROFLOT HONG KONG — 0001

LAM/DANIELMR — NOT TRANSFERABLE — CONJUNCTION TICKETS — 0001

| NOT GOOD FOR PASSAGE | CARRIER | FLIGHT | CLASS | DATE | TIME | STATUS | FARE BASIS | NOT VALID BEFORE | NOT VALID AFTER | ALLOW |
|---|---|---|---|---|---|---|---|---|---|---|
| VOID | | V | O | I | D | | | | | |
| VOID | | V | O | I | D | | | | | |
| HONG KONG | SU | 594 | C | 13MAR | 1430 | OK C | | | | 30K |
| MOSCOW SVO | SU | 593 | C | 22MAR | 1620 | OK C | | | | 30K |
| HONG KONG | | | | | | | | | | |

HKD 20420 13MAR94HKG SU MOW 02.58 1320.06SU HKG1320.06NUC2642.70END
ROE7.72690

FORM OF PAYMENT INVOICE AGT CLASSIC TOURS

HKD 20420 — 2403235890 — 555 2403235890 6 — DO NOT MARK OR STAMP IN THE WHITE AREA ABOVE

It will be observed that a box at the top of the ticket indicating "CONJUNCTION TICKETS" was left blank. Affidavits submitted by agent Li demonstrate that he was fully familiar with Lam's travel plans but was never asked about them during his dealings with G.U.E. In addition, agent Li's affidavit of November 15, 1995 contains a statement strongly suggesting that Aeroflot's agents in Hong Kong must have been aware that Lam's stop there was but one segment of a larger journey:

> When Mr. Lam checked in for his flight from Hong Kong to Moscow, he was required to present his passport and visa to Aeroflot's check-in agents, Cathay Pacific Airlines. Had they checked his passport and visa as they were supposed to do, they would have been on notice that he was from the United States and not Hong Kong. When Daniel [Lam] entered Hong Kong, the Immigration Department here would have stamped on his arrival/departure "Immigration Card" that he was permitted to stay in Hong Kong for 3 (or 6) months and this card was affixed to his passport available for the inspection of Aeroflot's check-in agent.

Li Aff., ¶ 9.

Plaintiff has submitted evidence indicating that it was Aeroflot's policy to ask purchasers, at the time when Aeroflot tickets were being issued, if the proposed passengers were flying on any other airlines in conjunction with the Aeroflot segment of their journey. G.U.E. never asked agent Li any such question.

## DISCUSSION

The parties agree that plaintiff's claims against Aeroflot are governed exclusively by the terms and conditions of the Warsaw Convention. *See* note following 49 U.S.C. § 1502. The issue before us is whether or not that treaty confers subject matter jurisdiction in this action.

### A. *Warsaw Convention*

Article 28(1) of the Warsaw Convention sets forth four forums in which actions arising out of "international transportation", as defined in the treaty, may be brought:

> An action for damages must be brought, at the option of the plaintiff, in the territory of one of the [signatory nations], either before the court of the domicile of the carrier or of his principal place of business, or where he has a place of business through which the contract has been made, or before the court at the place of destination.

In any of these four places, a court has subject matter jurisdiction over a suit against a carrier. *In re Alleged Food Poisoning Incident, March 1984* (2d Cir.1985) 770 F.2d 3, 5 n. 2. The parties to this action agree that the "domicile of the carrier" and the "principal place of business of the carrier" are each in Russia, and therefore cannot be the basis for jurisdiction in the United States. The question before us thus revolves around the last two prongs of the treaty: (1)

carrier's "place of business through which the contract has been made"; and (2) the "place of destination."

### 1. "Place of business through which the contract has been made"

■ Plaintiff's counsel argues that the contract of carriage was formed when Lam sent a fax to agent Li agreeing to purchase the tickets on Aeroflot's terms. In making this assertion, they expect us to draw the conclusion that the contract was entered into within the United States. This argument is flawed in that the agreement to purchase the tickets was effectuated by agent Li with G.U.E., not by Lam with agent Li.

■ Case law supports the view that the "place of business through which the contract has been made" is the place where the passenger ticket was issued. *See Stanford v. Kuwait Airways Corporation, et al.* (S.D.N.Y.1986) 648 F.Supp. 657, 661 (contract was made where decedents' airline tickets were purchased and issued); *Smith v. Canadian Pacific Airways, Ltd.* (2d Cir. 1971) 452 F.2d 798, 803 (jurisdiction [under this prong] not proper where the ticket was purchased outside the United States and no United States contacts, including but not limited to interline or intraline ticketing arrangements, existed beyond the presence of a ticketing and booking office of the carrier-defendant). Since Li, acting as Lam's agent, purchased the tickets from Aeroflot in Hong Kong, jurisdiction cannot be claimed under this prong.

### 2. "Place of destination"

■ The "place of destination" of a journey, as contemplated by the Warsaw Convention, is determined by reference to the intent of the parties. *In re Alleged Food Poisoning, supra,* 770 F.2d at 5. If the parties have regarded the transportation as an undivided round-trip journey, the existence of various stops on successive carriers does not alter the fact that the end of the trip is the "place of destination." *Id.* at 6. Thus the ultimate "destination," and not any "agreed stopping place," controls for purposes of jurisdiction under the rubric of the Convention. *Id.* In the cited case the injured passenger, who was traveling on a ticket from London to Washington, D.C., claimed the United States as a proper forum for his suit. The court rejected his assertion on a finding that although the London to Washington ticket was the only one issued by the carrier being sued, it was one of several tickets used by the passenger on his round trip journey to and from Riyadh, Saudi Arabia. *Id.*

■ The record before us conclusively establishes that Lam, just as the passenger in *In re Alleged Food Poisoning,* had embarked upon a round trip journey beginning, and supposed to end, in the same city. Though he planned to stop in several countries (*i.e.,* Hong Kong, China, Russian Federation) and travel on various carriers (*i.e.,* United Airlines, Dragon Air, Aeroflot) his point of embarkation was Denver, as was the terminus of his planned journey.

Defendant cites *Klos v. Polskie Linie Lotnicze* (2d Cir.1997) 133 F.3d 164 and *Swaminathan v. Swiss Air Transport Co., Ltd.* (5th Cir.1992) 962 F.2d 387 for the proposition that Hong Kong, and not the United States, should be considered the "place of destination" of the trip during which Lam was killed. Neither of these cases has any bearing on the facts before us.

In *Klos,* the travelers whose deaths were sought to be litigated were Polish nationals who had purchased round-trip tickets from the defendant carrier to New York and back to Poland. Since they were seeking to escape the Communist regime then controlling Poland, they planned to deplane in New York and never return to their homeland. All Polish citizens were then forced by the Communist government to purchase round-trip tickets. As a result, these travelers never told the airline anything about their plans to make the United States their final destination. The *Klos* court declined to find United States jurisdiction where the unexpressed intention of the travelers ignored the route specified on their round-trip tickets.

The *Klos* opinion started out by rejecting the district court's ruling that "[t]he intention of the passenger alone, and not the mutual intention of the parties as expressed in the contract, or otherwise, determines the pas-

senger's 'ultimate destination.' " *In re Air Crash Disaster Near Warsaw* (E.D.N.Y. 1991) 760 F.Supp. 30, 32. It made clear that in determining where a passenger intends to make a final destination, one is not to consider his unexpressed wishes, but only the expressed wishes disclosed in his contract with the carrier who issued the ticket. *Klos,* 133 F.3d at 167–68. The opinion drew a sharp distinction between the *expressed* intent of the passengers to return to Poland and their *covert* intent to remain in the United States. In concluding its analysis of the issue, it pointed out that "[t]he contract between LOT and decedents [passengers] was unambiguous, indicating the *clear mutual intent* of the parties that Warsaw be the place of final destination." (emphasis ours) *Id.*

On the facts of the case at bar, it is by no means unambiguous that a final destination of Hong Kong was the "clear mutual intent of the parties." Lam's ticket, assuming that it represented a contract between Lam and Aeroflot, was at best an incomplete document which in no way indicated the intent of anyone. Information concerning Lam's intent (notation of which would in no way have effected the validity or meaning of the ticket) was never requested by the defendant. Unlike the travelers in *Klos,* Lam harbored no covert plan to diverge from the route specified on the total sum of his tickets. Had Aeroflot, in issuing the ticket for its segment, been interested in learning Lam's ultimate destination, it could easily have learned it from agent Li, who was negotiating with it on Lam's behalf.

In *Swaminathan,* the plaintiff had bought a round-trip ticket from Dakar, Senegal to New York and back to Dakar. He nonetheless asserted that New York had been his ultimate destination and that he had left open the specific flight numbers and dates for his return to Dakar. It appears that Swaminathan intended to remain permanently in New York, but found that purchasing a round-trip ticket would be cheaper than a

one-way passage. The court rejected his argument and deemed Dakar to have been his final destination, holding, as would the Second Circuit in *Klos,* that when a contract is unambiguous, the instrument alone is taken to express the intent of the several parties. 962 F.2d at 389.

To summarize the distinctions between the facts before us and those in *Klos* and *Swaminathan:* In the first place, in the case before us there exists no instrument (or combination of instruments) which could by any stretch of the imagination be deemed a contract between the parties expressing the intent or understanding of either of them on whether the trip from Hong Kong to Russia and return should be considered an independent journey or a segment of a larger business trip beginning and ending in Denver.[2] We turn to other indications of the intent or understanding of the respective parties.

With respect to Lam's intent, everyone concerned with the journey was aware of his plan to make a business trip starting in Denver and ending there. He did nothing to conceal his plan from the carrier. With respect to Aeroflot, it actually participated in making the Hong Kong/Russia segment a part of the overall trip. Its authorized Denver agent, being temporarily unable to perform its usual function of issuing Aeroflot tickets for segments of planned round-trip journeys, advised Lam to apply directly to Hong Kong. Furthermore, as we have seen from agent Li's affidavit, Lam carried with him a variety of documents which he was presumably required to present to customs authorities and to airline employees upon boarding an aircraft, all of which clearly indicated that Hong Kong was not the end of his journey. No reasonable finder of fact could fail to conclude that Aeroflot must have learned of Lam's true plans at least before it permitted him to embark on the fatal leg of the journey.

2. We note that the clerk who issued the ticket entered the notation "SITI." This, according to the affidavit of Cheung Kwok Leung Alex, means "Sale inside and ticket issued inside the country of commencement of international transport." So far as we know, defendant has never claimed this entry to have any significance. Nor could it so claim. There is no suggestion in the evidence that Lam was aware of this notation or that he would have realized its significance had he noticed it.

We find Daniel Lam's "place of destination", as contemplated by the Warsaw Convention, to have been Denver, CO. Defendant's motion to dismiss for lack of subject matter jurisdiction is therefore denied.

**SO ORDERED.**