**FUJITSU LIMITED, Plaintiff,**

v.

**FEDERAL EXPRESS CORPORATION, Defendants.**

**No. 97 Civ. 5451(AKH).**

United States District Court, S.D. New York.

Nov. 30, 1999.

John Bigham Englar Jones & Houston, New York City, for plaintiff.

Eugene Massamillo, Biedermann, Hoenig, Massamillo & Ruff, New York City, for defendant.

### *ORDER and MEMORANDUM*

HELLERSTEIN, District Judge.

■ The issue put to me is whether an air carrier, asked to return rejected merchandise and performing the air carriage without a duly issued airway bill, is entitled to the damage limitation of the Warsaw Convention, ("the Convention"), for goods damaged during the air carriage. The issue was put to me for decision by Defendant Federal Express Corporation's motion for partial summary judgment and Plaintiff Fujitsu Limited's cross-motion for partial summary judgment. I hold that the air carrier is not entitled to the damage limitation and must respond to the plaintiff for the diminished value of the merchandise.

Plaintiff Fujitsu Limited, as consignor, engaged defendant Federal Express, through an affiliate, to transport by air a shipment of silicon wafers from Tokyo, Japan, to the consignee, Ross Technology, in Austin, Texas. Fujitsu caused airway bill 023–3665–3691 to be completed and executed, conforming to the requirements of the Warsaw Convention, modified by the Hague Protocol, 49 U.S.C. § 40105.

The consignee decided not to accept the merchandise, and engaged Federal Express to return the merchandise to the consignor in Tokyo at the consignee's expense. No new airway bill was created. Federal Express brought the merchandise back to its terminal in Memphis, Tennes-

see, for reshipment back to Japan. The silicon wafers were accidentally damaged in Memphis, causing approximately a $900,000 loss.

In Memphis, Federal Express created an airway bill, number 023–3682–3010, claiming that it did so to facilitate tracking of the merchandise. The airway bill did not provide all the details specified in the Warsaw Convention. It did not, for example, specify the place and date of its execution or the agreed stopping places of the shipment, as required by Articles 8(a) and 8(c) of the Convention.

Article 5 of the Convention provides for a consignor to complete an airway bill, and to require a carrier to transport merchandise covered by such airway bill. Articles 6 through 8 specify the details that are to be provided. Article 9 provides that if an air carrier transports merchandise covered by a conforming airway bill, the carrier is entitled to a limited liability of $9.07 per pound of transported merchandise; if there is no airway bill, or if the airway bill omits required details, a contract of carriage may still exist, but the carrier is not entitled to the limited liability provided by the Convention.

The question at issue is whether the return of rejected merchandise is covered by the same airway bill that covered the original passage. Counsel represent to the court that no case treats this question, and that the issue is of first impression. I hold that the original airway bill does not cover the return of rejected merchandise.

An airway bill, like all contracts, expresses an agreement of the parties. *In re Alleged Food Poisoning Incident, March, 1984*, 770 F.2d 3 (2d Cir.1985). The consignor and the air carrier agree, and set out in the airway bill, "the place and date of its execution," "the place of departure and of destination," and "the agreed stopping places," among other things. 49 U.S.C. § 40105, Art. 8. Airway bill "3691" set out Tokyo, Japan as "the place and date of its [the airway bill's] execution" and "the place of departure,"

and set out Austin, Texas as "the place of . . . Destination." Nothing was said with respect to the possibility of return of merchandise.

Federal Express represents that the consignee, upon rejecting the shipment, engaged Federal Express to return the merchandise, at the consignee's expense. Thus, the consignee became the consignor of the return carriage. But no new airway bill was created. Although Federal Express had the right to insist that the consignor create a new airway bill, *Id.*, Art. 5, Federal Express failed to do so. Thus, a contract of carriage was effected between Federal Express and the consignee, but Federal Express failed to create the mechanism giving it limited liability under the Convention. Federal Express' late creation of an airway bill did not conform to the Convention and was ineffective to give it limited liability. Without conforming provisions and procedures, the limitations of liability provided by Article 9 of the Convention for an air carrier cannot be invoked. *Federal Ins. Co. v. Yusen Air & Sea Serv.*, No. 97 Civ. 3830, 1998 WL 477987 at *2 (S.D.N.Y. Aug. 14 1998) (Article 9 precludes reliance on Article 22, limiting liability, if party failed to comply with particulars of Article 8).

■ At oral argument, I commented that custom and usage might be relevant to show that a return carriage may be covered by the original airway bill. It appears, however, that custom and usage may not modify a clear provision of a contract, *Hunt v. Lifschultz Fast Freight, Inc.*, 889 F.2d 1274, 1277 (2d Cir.1989), and airway bill "3691" is clear and unambiguous as to the places of departure and destination of the goods in question.

Accordingly, I grant Fujitsu's cross-motion.

The parties shall attend a conference on December 16, 1999, at 4:00 p.m., to discuss

such proceedings as may be necessary finally to resolve this case.

SO ORDERED.