In re AIR CRASH NEAR NANTUCK-
ET ISLAND, MASSACHUSETTS,
ON OCTOBER 31, 1999.

No. 00–MDL–1344.

United States District Court,
E.D. New York.

Aug. 16, 2004.

Jerome L. Skinner, Esq., Waite Schneider Bayless & Chesley, Cincinnati, OH, for Plaintiffs.

Donald J. Nolan, Esq., Nolan Law Group, Chicago, IL, for Certain Plaintiffs.

Scott F. Seablom, Esq., Perkins Coie LLP, Seattle, WA, for Defendant Boeing Corp.

Mitchel E. Kallet, Esq., Kern & Wooley LLP, Hartford, CT, for Defendant Parker Hannifin.

Christopher Carlsen, Esq., Condon & Forsyth LLP, New York City, for Defendant EgyptAir.

## MEMORANDUM AND ORDER

BLOCK, District Judge.

Pursuant to Fed.R.Civ.P. 12(b)(1), EgyptAir moves to dismiss for lack of subject matter jurisdiction, based on Article 28 of the Warsaw Convention ("Convention"),[1] the claims brought against it by the estates of two Egyptian passengers, Ahmed Hossam El Din Gaafar El Hefny and Tamer Ibrahim Kassem,[2] who died in the crash of EgyptAir Flight 990 on October 31, 1999, and the cross-claims and third party claims of Boeing and Parker Hannifin seeking contribution and indemnity from EgyptAir. For the reasons that follow, EgyptAir's motion is granted as to the claims brought by the estates of the two Egyptian passengers, and denied as to the cross-claims and third party claims of Boeing and Parker Hannifin.

## BACKGROUND

In addition to the two claims of the estates of the Egyptian passengers against EgyptAir, numerous other passengers from Egypt, Canada and Syria have sued just the plane's manufacturers, Boeing and Parker Hannifin, who then in turn brought the challenged cross-claims and third party claims against EgyptAir. All of the plaintiffs' claims in question involve foreign passengers who were traveling on EgyptAir Flight 990 on tickets purchased in their home countries, which provided for round-trip transportation beginning and ending in those countries. *See* Affidavit of Samir El Shanawany (attaching passenger tickets). The domicile and principal place of business of EgyptAir is Egypt.

## DISCUSSION

### I. The Convention

■ The Convention is a treaty subscribed to by the United States. "As a treaty adhered to by the United States, [the Convention] is the supreme law of the land and trumps local law when it applies." *Commercial Union Ins. Co. v. Alitalia Airlines, S.p.A.*, 347 F.3d 448, 456 (2d Cir.2003) (citing U.S. Const. art. II, § 2 and art. VI). The Convention applies "to all international transportation of persons, baggage, or cargo performed by aircraft

---

1. The Convention's full name is the Convention for the Unification of Certain Rules Relating to International Transportation by Air, Oct. 12, 1929, 49 Stat. 3000, 3014, T.S. No. 876 (1934).

2. Both of these claims were brought within *Dimitri et al v. Boeing et al*, 01–CV–1885.

for reward." Convention, art. 1(1). If air travel constitutes international transportation as defined by the Convention, then "the Convention applies to [the] transportation and its provisions control the rights of the parties." *In re Air Disaster at Lockerbie, Scotland,* 928 F.2d 1267, 1274 (2d Cir.1991). The purpose of the Convention was to create "the uniform regulation of international air carrier liability." *El Al Israel Airlines v. Tseng,* 525 U.S. 155, 161, 119 S.Ct. 662, 142 L.Ed.2d 576 (1999).

Article 28(*l*) of the Convention specifies that actions against the carrier arising out of international transportation must be brought in one of four fora: "1) where the carrier is domiciled; 2) where the carrier has its principal place of business; 3) where the contract of transportation was made; or 4) the place where the transportation was to end." *Klos v. Polskie Linie Lotnicze,* 133 F.3d 164, 167 (2d Cir.1997) (citing the Convention). If none of these fora is the United States, federal courts will lack jurisdiction.

## II. The Claims of the Estates of the Egyptian Passengers Against EgyptAir

■ The estates of the two Egyptian passengers which have sued EgyptAir do not come within the embrace of any of the four Article 28 fora: EgyptAir is neither domiciled, nor does it have its principal place of business, in the United States; the contract of transportation for these passengers was made in Egypt, and the place where transportation was to end for these passengers was Egypt. Accordingly, the Court does not have subject matter jurisdiction over these claims; indeed,

plaintiffs' counsel has not submitted opposition papers.[3]

## III. The Claims of Boeing and Parker Hannifin

■ The suits brought by the Egyptian, Canadian and Syrian plaintiffs against Boeing and Parker Hannifin triggered Boeing's and Parker Hannifin's contribution and indemnity claims against EgyptAir. EgyptAir argues that because subject matter jurisdiction would not exist in the United States if these plaintiffs had sued EgyptAir, jurisdiction cannot exist over the contribution and indemnity claims because "[t]he carrier's liability, if any, with respect to such contribution or indemnity claims is coextensive with, and cannot be different from, its liability with respect to the underlying passenger claim." Memorandum of Law in Support of Defendant EgyptAir's Motion to Dismiss for Lack of Subject Matter Jurisdiction Under Article 28 of the Warsaw Convention ("EgyptAir's Memorandum"), at 9. EgyptAir reasons that permitting Boeing and Parker Hannifin to recover via contribution or indemnity against EgyptAir would allow recovery on the passenger claims to be indirectly imposed against EgyptAir in the United States, when such recovery could not be directly imposed. *See* Oral Argument Transcript, July 20, 2004, at 28.

Boeing argues that 1) EgyptAir fails to recognize that contractual indemnity claims arise from a separate and independent duty voluntarily assumed by EgyptAir; 2) EgyptAir's contention is contrary to the one decision directly on point, *In re Air Crash at Agana, Guam,* MDL No. 1237, No. 98 ml 7211 (C.D.Cal. Jan. 25, 1999);[4] 3) the clear intent of the drafters

---

3. The Court notes that these plaintiffs have also joined Boeing and Parker Hannifin as defendants; those claims remain, and are the subject of Boeing's and Parker Hannifin's cross-claims against EgyptAir.

4. The text of this unreported opinion is attached to this Memorandum and Order as an appendix.

of the Convention was to regulate only the "legal relationships which arise between the carrier and person carried or the people who ship." Memorandum of the Boeing Company in Opposition to EgyptAir's Motion to Dismiss for Lack of Subject Matter Jurisdiction Under Article 28 of the Warsaw Convention ("Boeing's Memorandum"), at 3 (quoting SECOND INTERNATIONAL CONFERENCE ON PRIVATE AERONAUTICAL LAW, MINUTES, WARSAW 1929 at 246). Boeing argues that EgyptAir's liability to Boeing is not "coextensive" with its liability to passengers because it arises out of separate contractual obligations; "[a]nd for [EgyptAir] to now come in and ask [the Court] to take an expansive view of the Convention that would wipe out the contractual commitments that [it] made at the time [it] purchased the aircraft and which were bargained for ... would turn [its] contractual obligation on its head." Oral Argument Transcript, July 20, 2004, at 40.

Boeing also argues that the purpose of the Convention was to create a *quid pro quo* between carriers and passengers, in which passengers recover damages without the need to prove the carrier's negligence, but in return have a cap placed on their recovery. *Id.* It notes that no such *quid pro quo* was contemplated by the Convention as to manufacturers. *Id.*

Similarly, Parker Hannifin argues that, as a parts manufacturer, it is not a party contemplated by the Convention and that its claims are therefore beyond the Convention's reach. Parker Hannifin notes that while the four fora are clearly designed to have a connection with carriers and passengers, they do not provide a forum that would necessarily have any connection to the manufacturer, as the present case illustrates.

The parties agree that *Agana* is the only decision directly on point. The argument made in *Agana,* as here, was that the airline was having "jurisdiction indirectly foisted on it for passenger claims when it could not be directly maintained." *Agana,* No. 98 ml 7211 at 2. The court determined that, because the Convention "does not cover the claims of others than passengers and shippers[,] ... [t]he airline's liability to or from others for tort or contracts is not governed by the Convention." *Id.* at 2–3. Notably, the United States, which was a litigant in *Agana,* took the position that the Convention did not apply to claims brought by entities other than passengers and shippers. *Cf. El Al Israel Airlines,* 525 U.S. 155, 168, 119 S.Ct. 662, 142 L.Ed.2d 576 (1999) ("Respect is ordinarily due the reasonable views of the Executive Branch concerning the meaning of an international treaty."). EgyptAir argues that *Agana* is wrongly decided because "it focused incorrectly on the identity of the party making the claim, instead of the Convention's well-established goals of uniformity and limitation of carrier liability." EgyptAir's Memorandum, at 16.

In the Court's view, *Agana* was correctly decided. The identity of the parties is central to the Convention. The express purpose of the Convention was to regulate litigation between passengers and carriers. *See El Al Israel,* 525 U.S. at 171–72, 119 S.Ct. 662 ("the convention addresses and concerns, only and exclusively, the airlines's liability for passenger injuries occurring 'on board the aircraft or in the course of any of the operations of embarking or disembarking.' ") (quoting Warsaw Convention, Art. 17, 49 Stat. 3018). *See also* SECOND INTERNATIONAL CONFERENCE ON PRIVATE AERONAUTICAL LAW, MINUTES, WARSAW 1929 at 246 ("[I]t is important to bring out that in this matter an international agreement can only be reached if it is limited to certain determined problems. The text

applies, therefore, only to the contract of carriage in its formal appearances first of all, and in the legal relationships which arise between the carrier and the persons carried or the people who ship."). The Convention is silent as to contribution and indemnification claims between manufacturers and carriers and, indeed, as to manufacturers generally; nor has EgyptAir pointed to anything in the drafting history of the Convention that would suggest it meant to cover such claims. For the Court to apply the Convention to contribution and indemnity claims of manufacturers would expand the reach of the Convention beyond its intended scope.

Further, EgyptAir's arguments that Boeing's and Parker Hannifin's claims are coextensive with the underlying passenger claims is incorrect, as the contribution and contractual indemnity claims are based on Boeing and Parker Hannifin's legal and equitable relationships with EgyptAir, and are distinct from any passenger claim. *See Ryan Stevedoring Co. v. Pan–Atl. S.S. Corp.*, 350 U.S. 124, 130, 76 S.Ct. 232, 100 L.Ed. 133 (1956) (indemnity liability "springs from an independent contractual right" distinct from the underlying tort claim); *Triguero v. Consolidated Rail Corp.*, 932 F.2d 95, 99 (2d Cir.1991) (same). *See also* RESTATEMENT (THIRD) OF TORTS: APPORTIONMENT OF LIABILITY § 22(b) (2000) ("A person who is otherwise entitled to recover indemnity pursuant to contract may do so even if the party against whom indemnity is sought would not be liable to plaintiff.").

At oral argument, EgyptAir relied heavily on the Second Circuit's decision in *Reed v. Wiser*, 555 F.2d 1079 (2d Cir.1977). This reliance is misplaced. *Reed* involved an attempt by the estates of passengers who perished in an international air crash to circumvent the Convention's liability limitations by bringing suit against individual airline employees. Noting that the "liability limitations of the Convention could then be circumvented by the simple device of a suit against the pilot and/or other employees, which would force the American employer … to provide indemnity for higher recoveries as the price for service by employees," *id.* at 1083, the court held that the Convention's liability limitations applied to such claims.

In the present case, EgyptAir is not contending that the liability limitations of the Convention apply to the passengers' claims against the manufacturers. While the plaintiffs in *Reed* were obviously trying to indirectly reach further into the carrier's pockets than they would be able to directly reach, here the passengers (assuming, *arguendo*, that they succeed on their claims) will be entitled to the same recovery from the manufacturers regardless of whether the manufacturers are successful in obtaining contribution and/or indemnity from EgyptAir.

## CONCLUSION

EgyptAir's Fed.R.Civ.P. 12(b)(1) motion to dismiss for lack of subject matter jurisdiction pursuant to the Warsaw Convention is granted as to the claims brought by the estates of the two Egyptian passengers, and denied as to the third party claims and cross-claims of Boeing and Parker Hannifin.

**SO ORDERED.**